**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

v.  Case No. 8:13-CR-00045-T-26TBM

**ADAM ORT**
_____ /

**SENTENCING MEMORANDUM**

COMES NOW, the Defendant, ADAM ORT, by and through undersigned counsel, pursuant to U.S.S.G. §2B1.1, Application Note 19(c) and 18 U.S.C. §3553(a), and hereby moves this Honorable Court for a departure downward from his otherwise advisory guideline imprisonment range and/or a variance to a reasonable sentence which is no greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. §3553(a). As grounds in support thereof, Mr. Ort would show:

Biographical Information

Adam Ort was born on May 29, 1970. He is 43 years of age. He has three (3) minor children with his former spouse, Stephanie Hess. He presently shares a home with his girlfriend of several years, Kris Masaracchio, and her three (3) minor children. Mr. Ort provides financial support of approximately $2,100.00 a month to his three (3) biological children who reside with their mother in Hawaii.

Mr. Ort spends time with his children during the summer and on every significant school break, pursuant to court order. He also flies to Hawaii to visit with his children every other month. Additionally, he contributes to Ms. Masaracchio's household by paying approximately $1,100.00 a month for expenses plus incidentals. Further, since Ms. Masaracchio works as a flight attendant for American Airlines, Mr. Ort is often called upon to care for her three (3) minor children.

Mr. Ort has a Bachelor's degree in Marketing from the University of South Florida and a Juris Doctorate from Stetson University College of Law. He is currently employed as the Executive Director of Horizon Bay Senior Assisted Living Facility in Tamarac, Florida. He has been employed in this field for approximately six and a half years. He is well-respected in his field and has a passion for the plight of seniors who find themselves in need of extensive care in their remaining years of life.

While a student at Stetson, Mr. Ort clerked for Holland and Knight and was offered a permanent position in their Orlando office upon graduation. He declined this offer and entered in to the world of real estate at his wife's urging.

On February 14, 2013, Mr. Ort pled guilty to the charge of Conspiracy to Commit Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. §1349. The criminal activity, in part, was based on misrepresentations on the

United States Department of Housing and Urban Development settlement statements (HUD-1) used in some closings to identify and allocate the various receipts, disbursements, expenses, and payments associated with the sale of residential real estate between the buyers and the sellers of property. Mr. Ort, as a licensed title agent and a corporate officer and/or owner of numerous title companies, as well as a company called Premier Financial, participated in a number of closings wherein a fraudulent HUD-1 statement was relied upon. Premier Financial, in particular, was a company designed to finance the down-payment of qualified buyers to purchase fair market value properties. In exchange, Premier Financial received anywhere from $300.00 to $400.00 on average per transaction. At the time of these transactions, neither the lender, the seller nor the borrower realized any loss. Mr. Ort did not anticipate the loss that the lending banks could incur if the real estate market were to significantly depreciate as it did.

## Advisory Sentencing Guidelines

The United States Probation Office has submitted a Presentence Investigation Report (hereinafter, the "Report") which has properly determined that pursuant to U.S.S.G. §2B1.1 and U.S.S.G. §2X1.1, Mr. Ort's base offense level is 29. This level is based on the statutory maximum, the amount of loss and the number of victims. Mr. Ort was then assessed a total of five (5) levels upward

for his role in the offense.  The Report gives Mr. Ort three (3) levels downward for Acceptance of Responsibility and Timeliness.  Additionally, the government has filed a Motion for Downward Departure of Defendant's Sentence Based on Substantial Assistance and moves this Honorable Court to reduce Mr. Ort's guideline sentence by an additional two (2) levels.  Mr. Ort agrees that his guidelines call for a sentence of 87 - 108 months imprisonment, based on an offense level of 29 and criminal history category I.

## Argument

Mr Ort's request for a downward departure is pursuant, in part, to U.S.S.G. §2B1.1, Application Note 19(c).  This provision of the guidelines provides that "there may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense.  In such cases, a downward departure may be warranted."  Mr. Ort did not possess any malice or intent to defraud the lending banks at the time of the misrepresentations in the HUD-1 statements.  The defense contends that the borrowers represented truthful employment information, income and assets.  The properties were transferred at or near actual market value.  The properties were described as rentals and not as primary residence loans.  The misrepresentation to the lending banks concerned the origination of the downpayments being provided by the borrowers.  Mr. Ort could not foresee the collapse of the real estate market, the banks and ultimately,

the economy; nor could he have known that so many borrowers would default on their loans.

Mr. Ort is 43 years old. He is in a stable relationship where he assists with the financial and emotional support of three (3) minor children. He is a dedicated and involved father to his own biological children, notwithstanding the geographical distance between them. He has no prior criminal record and no history of drug use. He has earned both a Bachelor's degree and a Juris Doctorate degree. He has maintained employment throughout his life and he has recently dedicated himself to the betterment of the lives of others through his employment in the assisted-living field. Based on the foregoing and the non-existent likelihood of recidivism, a departure under U.S.S.G. §5H is warranted.

Factors that Warrant a Sentence Outside the Advisory Guideline Range

Mr. Ort lived a law-abiding life until the instant case. He was an active member of the community and a dedicated family man. His offense is completely uncharacteristic when viewed in the context of his entire productive adult life. This Court should grant a variance based on the aberrant nature of his conduct. *See, e.g., United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008)(variance based on "isolated mistake" in otherwise long and entirely upstanding life); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005)(defendant was a "law abiding citizen, who [did] an incredibly dumb thing"); *United States v. Davis*, 2008 WL 2329290

(S.D.N.Y. June 5, 2008)(defendant was a first offender who had worked throughout his 15-year marriage to educate his six children and whose offense was prompted by economic pressures). Mr. Ort will suffer catastrophic collateral consequences as a result of his guilty plea. Mr. Ort will suffer the loss of his employment, his professional reputation, and the possibility of his ability to become a member of the Florida Bar. *See, e.g., United States v. Gaind*, 824 F.Supp. 669, 671 (S.D.N.Y. 1993)(granting downward departure where defendant was punished by the loss of his business).

As this Court is well aware, all sentences should be "sufficient but not greater than necessary." 18 U.S.C. §3553(a). They should fit the crime, afford "adequate deterrence," "protect the public," and promote rehabilitation. 18 U.S.C. §3553(a)(2). Since the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005) and *Kimbrough v. United States*, 552 U.S. 85 (2007), federal district courts have been given great discretion, within certain limits, to decide appropriate sentences below or above the otherwise advisory federal sentencing guideline ranges. In imposing a reasonable sentence, district courts, post-*Booker*, are required to consider, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. §3553(a). An analysis of the 18 U.S.C. §3553(a) factors in the present case support a finding that the advisory guideline imprisonment ranges in Mr. Ort's

case is greater than necessary to accomplish the purposes of sentencing and, therefore, a variance would be appropriate.

While the fraud guideline focuses primarily on aggregate monetary loss and victimization, it "fails to measure a host of other factors that may be important, and may be a basis for mitigating punishment, in a particular case." Allan Ellis, John R. Steer, Mark Allenbaugh, *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, 25 Crim. Just. 34, 37 (2011); *see also United States v. Ovid*, slip op., 2010 WL 3940724, *1 (E.D.N.Y. Oct. 1, 2010)("[T]he fraud guideline, despite its excessive complexity, still does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so."). A substantial variance is warranted in this case because of the following mitigating factors, all of which are highly relevant to the purposes of sentencing, and none of which is taken into account by the guideline range.

In "determining the particular sentence to be imposed," the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. §3553(a)(1) - (7).

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

As previously described, Mr. Ort did not intend to defraud the borrowers or the banks providing the mortgages. The properties were sold at or near their actual fair market value. The income of the borrowers was accurately reported. The deception occurred when the banks were misled to believe that the downpayment was actually being provided by the borrowers. Mr. Ort was not the owner, buyer or seller of the properties. At the time of the offense, Mr. Ort mistakenly believed, as did practically every other human being on the planet, that the housing market would continue to skyrocket. When the real estate market failed, borrowers had no true investment in the properties - no "skin in the game" - and therefore did not have the incentive to save their loans. Mr. Ort acknowledges the damage his action caused. But it is equally important to note that he did not have the malice to defraud the lending banks when the crime was being committed.

(b) To afford adequate deterrence to criminal conduct.

Mr. Ort has no record of previous arrests or convictions. He has an impeccable record of public service and decency. Mr. Ort will most certainly never again engage in criminal activity. When considering Mr. Ort's age, level of education and employment history, there is little chance of recidivism. There is

no empirical evidence that suggests that sentence length has a deterrent effect on future crime. Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28-29 (2006). The Sentencing Commission has found that there is no correlation between recidivism and guideline offense levels; thus, an offender with a low guideline range and one with a high guideline range would have the same rate of recidivism. U.S. Sentencing Commission, *Measuring Recidivism: The Criminal Computation of the Federal Sentencing Guidelines*, at 15 (May 2004). In fact, the offender with the lowest rate of recidivism is one who receives probation and fines only. *Id.* at 13.

Mr. Ort has an extraordinarily low statistical likelihood of recidivism. As a first time offender with no prior criminal or professional instances of misconduct, there is a 3.6 percent likelihood that Mr. Ort will re-offend. U.S. Sentencing Commission, *Measuring Recidivism: The Criminal Computation of the Federal Sentencing Guidelines*, at 15 (May 2004) at 23. When considering Mr. Ort's age, lack of evidence of any criminal activity prior or subsequent to the instant offense, level of education, family ties and employment history, the likelihood of reoffending would be extremely low. And again, there is no empirical evidence that the imposition of a harsh sentence would deter Mr. Ort or any other similarly-situated offender. As such, the Court would be justified in granting a variance.

(c) <u>To protect the public from further crimes of the defendant.</u>

Mr. Ort is fully aware of the guidelines applicable in his case and respectfully asks this court to consider the least amount of incarceration. Mr. Ort was first approached by law enforcement in 2009 regarding this incident. Mr. Ort has remained available to law enforcement through the entire process, has been forthright about his involvement, and has not been involved in any criminal activity. Mr. Ort continues to be a productive member of society. In addition to his previously-discussed employment and family activities, Mr. Ort has spent innumerable hours since high school coaching, mentoring and refereeing youth sports.

The United States Code also encourages the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6). Michael Jordan, a co-conspirator charged in Middle District of Florida Case 8:13-cr-00057-t-23EAJ, was recently sentence to thirty-seven (37) months prison, followed by three (3) years of supervised release.

Finally, in determining an appropriate sentence, the Court should consider "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(7). As previously indicated, Mr. Ort has a strong employment history. Further, it has been his plan to sit for the Bar examination, seek admittance, and

pursue a career in Elder Law. While this plan has obviously met a significant roadblock, it remains possible and Mr. Ort would like every opportunity to continue his pursuit of this goal. He is confident that under any employment circumstances, he will be able to repay a significant portion of the restitution owed in this case.

Conclusion

The United States Supreme Court in *Booker v. United States*, 543 U.S. 220 (2005), issued the landmark opinion that rendered the guidelines advisory. Judges are now invited to consider arguments that the applicable guidelines in a particular case fail to properly reflect §3553(a) considerations. *Rita v. United States*, 551 U.S. 338, 351, 357 (2007). Judges "may vary [from guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), particularly when the Commission did not act in "the exercise of its characteristic institutional role," i.e., did not base a guideline on "empirical data and national experience." *Id*. at 109.

In closing, the Defendant, ADAM ORT, requests that the Court consider a downward departure or variance of the calculated guideline sentence, and impose a below guidelines sentence. This offense was limited in time and scope. Mr. Ort has live a law-abiding and productive life. Given Mr. Ort's background, as

well as the unique facts and circumstances of this case, a sentence substantially below the recommended guideline imprisonment range would be justified.

DATED this 13th day of August, 2013.

Respectfully submitted,

*/s/ Lisa B. McLean*
Lisa B. McLean, Esquire
Lisa B. McLean, P.A.
Florida Bar No.: 0883700
3802 W. Bay to Bay Boulevard
Suite 12
Tampa, Florida 33629
Telephone: (813) 229-5343
Facsimile: (813) 229-4797
Email: lisa@mcleanlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of August, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Thomas Palermo

*/s/ Lisa B. McLean*
Lisa B. McLean, Esquire
Lisa B. McLean, P.A.